UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Tamatha M. Bechtold, as Trustee for the Heirs and Next of Kin of Mitchel Raymond Hiltner, Decedent, | Case No.: |
| Plaintiff, | |
| vs. | |
| City of St. Cloud, Minnesota; Matthew Riekena, individually and in his capacity as a St. Cloud police officer; Erik Wilson, individually and in his capacity as a St. Cloud police officer; Brandon Merkling, individually and in his capacity as a St. Cloud police officer; and Jared Rathburn, individually and in his capacity as a St. Cloud police officer, | **COMPLAINT** |
| Defendants. | |

_____

For her complaint against defendants City of St. Cloud, Minnesota and its police department's officers Matthew Riekena, Erik Wilson, Brandon Merkling and Jared Rathburn, plaintiff Tamatha M. Bechtold, as Trustee for the Heirs and Next of Kin of Mitchel Raymond Hiltner, Decedent, states and alleges as follows:

## INTRODUCTION

1. This is an action for damages due to the wrongful death of Mitchel Raymond Hiltner, which occurred as a result of an incident occurring on August 26, 2018, involving St. Cloud police officers Matthew Riekena, Erik Wilson, Brandon Merkling and Jared Rathburn. The tortious conduct hereafter alleged violated decedent's federal civil rights

1

and constitutes tortious conduct on behalf of all defendants, while acting under color of state law and in their respective individual capacities.

## JURISDICTION AND VENUE

2. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 and applicable provisions of the United States Constitution. 28 U.S.C. §§ 1331 and 1343 along with the aforementioned statutory and constitutional provisions establish jurisdiction of this court. Plaintiff further invokes this court's pendant jurisdiction regarding claims arising under the laws of the state of Minnesota.

3. Plaintiff's damages exceed $75,000.00, excluding interest, costs and attorney fees.

4. Venue is proper under 28 U.S.C. § 1391(b) because all incidents, actions and/or omissions giving rise to this action occurred in this judicial district.

## PARTIES

5. Plaintiff Tamatha M. Bechtold ("Plaintiff") is a citizen of Minnesota. On July 27, 2020, Plaintiff was duly appointed as trustee for the heirs and next of kin of decedent Mitchel Raymond Hiltner ("Decedent") by order of the district court of Stearns County, Minnesota.

6. Defendant City of St. Cloud, Minnesota ("City") is and was at all times material hereto a political subdivision of the state of Minnesota duly organized and existing under the laws of Minnesota. The City's police department ("SCPD") is and was at all times material hereto an agency of the City responsible for providing, *inter alia*, law enforcement services on behalf of the City including the training of the SCPD's officers, the ongoing review of its training programs and the updating thereof. The SCPD was at all times material hereto the employer of the defendant police officers and responsible for their training including their training in the use of force employed thereby on August 26, 2018, resulting in Decedent's death while acting in both their official and individual capacities.

7. Defendant officer Matthew Riekena ("Officer Riekena") was at all times material hereto a police officer employed by the SCPD. As hereafter alleged, Officer Riekena violated the Decedent's civil rights and/or engaged in other tortious conduct while acting in both his official and individual capacities.

8. Defendant officer Erik Wilson ("Officer Wilson") was at all times material hereto a police officer employed by the SCPD. As hereafter alleged, Officer Wilson violated the Decedent's civil rights and/or engaged in other tortious conduct while acting in both his official and individual capacities.

9. Defendant officer Brandon Merkling ("Officer Merkling") was at all times material hereto a police officer employed by the SCPD. As hereafter alleged, Officer Merkling violated the Decedent's civil rights and/or engaged in other tortious conduct while acting in both his official and individual capacities.

10. Defendant Sergeant Jared Rathburn ("Sergeant Rathburn") was at all times material hereto a police officer employed by the SCPD at the rank of Sergeant. Due to possessing the superior rank of Sergeant, upon his arriving at the scene of the August 26, 2018 incident, Sergeant Rathburn assumed supervisory authority over the actions of Officer Riekena, Officer Wilson and Officer Merkling. As hereafter alleged, Sergeant Rathburn violated the Decedent's civil rights and/or engaged in other tortious conduct while acting in both his official and individual capacities.

**FACTS**

11. The Decedent was born in 1993, and at the time of the August 26, 2018 incident was twenty-five years old.

12. On August 26, 2018, at approximately 10:52 p.m., St. Cloud Fire Department medical personnel and Officer Riekena were dispatched to a medical emergency in response to a 911 call.

13. Officer Riekena was familiar with both the person who made the 911 call and the residence where the medical emergency was occurring from previous responses and was concerned about drug use in the residence. Given that concern, Officer Riekena asked for an additional officer to be dispatched to assist.

14. Officer Riekena was the first to arrive at the residence and made contact with the 911 caller, who took Officer Riekena to the room where the Decedent was located.

15. Officer Riekena observed the Decedent to be awake but not communicating. When asked if he had taken any drugs, the Decedent did not respond but continued staring in what Officer Riekena described as a "thousand-yard stare."

16. Two St. Cloud Fire Department personnel entered the room at that time and Officer Riekena advised them that he believed the Decedent was under the influence of drugs. Due to the Decedent's incoherency and inability to respond to his commands, Officer Riekena requested back-up to hurry their response to the scene.

17. Officer Wilson and ambulance personnel arrived a short time later. Upon his arrival, Officer Wilson observed the Decedent leaning on a child's playpen and appearing to be having trouble breathing.

18. Officer Wilson and ambulance personnel both tried to communicate with the Decedent, advising him that they were there to assist him with his medical issue. Officer Wilson asked the Decedent multiple times if he would allow ambulance personnel to walk

out with him to the ambulance and to assist him. Due to the Decedent's drug-induced incoherency, inability to communicate and observed trouble breathing, the Decedent did not respond.

19. Thereafter, Officer Merkling arrived at the scene to assist.

20. Officer Riekena, Officer Wilson and Officer Merkling jointly determined they would attempt to escort the Decedent out of the residence and to the ambulance for medical treatment.

21. Officer Wilson grabbed the still incoherent Decedent's left arm while Officer Riekena grabbed the Decedent's right arm with both officers starting to escort the Decedent out of the room to the ambulance. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with the officers.

22. Thereafter the officers attempted to handcuff the still incoherent Decedent. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with the officers.

23. Thereafter, Officer Merkling grabbed and handcuffed the Decedent's right arm. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with the officers.

24. Thereafter, the officers continued to advise the Decedent to calm down, that they were there to assist him and wanted to get him to the ambulance. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with the officers.

**The Decedent Was Tased.**

25. Conducted electrical weaponry such as Tasers are medically contraindicated to be deployed to the front of a person's torso due to risking potential interactions with their cardiac electrical activity, potentially causing cardiac arrest. This risk is increased in people using stimulant illegal drugs such as methamphetamines and amphetamines.

26. Thereafter, the officers determined they needed to take the still incoherent Decedent to the floor. Notwithstanding his belief that the Decedent was under the influence of drugs, his observations of the Decedent's difficulty breathing and otherwise mindful of the potentially lethal effects of using conducted electrical weaponry such as Tasers under such circumstances including, without limitation, cardio-pulmonary arrest; Officer Riekena pulled out his Taser and warned the Decedent he would be Tased if he did not cooperate. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with Officer Riekena.

27. Notwithstanding his belief that the Decedent was under the influence of drugs, his observations of the Decedent's difficulty breathing and otherwise mindful of the potentially lethal effects of using conducted electrical weaponry such as Tasers under such circumstances including, without limitation, cardio-pulmonary arrest; Officer Merkling also advised the Decedent he would be Tased if he did not cooperate. Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the Decedent lacked the ability to cooperate with Officer Merkling.

28. Thereafter, Officer Merkling advised Officer Riekena to use his Taser on the still incoherent Decedent. Officer Riekena fired his Taser striking the Decedent on the front

of his body. The first set of his Taser's probes appeared to have no effect as they did not appear to have made contact with the Decedent's body but, rather stuck in his shirt.

29. Officer Riekena then fired his Taser a second time into the Decedent's upper torso discharging electrical current for approximately eleven-seconds causing the Decedent to scream, thrash out and fall backwards onto a bed.

**The Decedent Was Placed In Prone Restraint.**

30. The SCPD trains its officers in the use of "prone restraint."

31. It is well known throughout the law enforcement and medical communities that subjecting a person to prone restraint for prolonged periods of time can be lethal.

32. Compressing a person in a prone position with weight on their back and/or abdomen can restrict their ability to breathe and can result in asphyxiation.

33. Deaths caused by this form of asphyxiation are often interchangeably referred to as deaths from positional, mechanical, or compression asphyxia.

34. For decades, the United States Department of Justice has warned law enforcement agencies about the dangers associated with prone restraint.

> "The risk of positional asphyxia is compounded when an individual with predisposing factors becomes involved in a violent struggle with an officer or officers, particularly when physical restraint includes behind-the-back handcuffing combined with placing the subject in a stomach-down position."

National Law Enforcement Technology Center, Positional Asphyxia—Sudden Death (June 1995).

35. The SCPD has known of the dangers associated with prone restraint and positional asphyxia, and upon belief, has incorporated such knowledge in the training of

7

its officers, the ongoing review of its training programs and the updating thereof. In turn, through their training, such dangers were known to Officers Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn on August 26, 2018.

36. Due to the well-known risks associated with prone restraint, it has long been the best practice that once a subject is controlled, it is imperative that they be moved from the prone position, and that their breathing be carefully monitored.

37. Following his being Tased, the officers placed the still incoherent Decedent down on the floor where they were able to secure the second handcuff behind his back (prone restraint, stomach-down position). Due to the Decedent's drug-induced incoherency, inability to communicate and trouble breathing, the now prone/restrained Decedent continued to lack the ability to cooperate.

38. Thereafter, officers requested a WRAP (restraint) device be brought to the scene in order to secure the still incoherent Decedent's legs for transport to the ambulance.

39. While awaiting the WRAP device, Officer Riekena kneeled across the still incoherent, now prone/restrained Decedent's legs while Officer Merkling attempted to restrain the Decedent's upper body by kneeling across the Decedent's upper-back torso area to prevent him from trying to rise. Officer Merkling did so notwithstanding his belief that the Decedent was under the influence of drugs and his observations of the Decedent's difficulty breathing.

40. Thereafter, Sergeant Rathburn arrived at the scene with the WRAP device. As the officers applied the WRAP device to the Decedent's legs, Officer Merkling kneeled across the Decedent's upper-back torso area to prevent him from trying to rise. Officer

Merkling continued doing so notwithstanding his belief that the Decedent was under the influence of drugs and his observations of the Decedent's difficulty breathing.

41. As Sergeant Rathburn was applying the WRAP device to the Decedent's legs, he asked about the Decedent's status with Officer Merkling responding that he believed the Decedent was breathing because he could hear grunting and observe his chest moving.

42. Approximately one minute later, as the officers were securing the WRAP device, Sergeant Rathburn again asked about the Decedent's breathing. As the Decent was rolled onto his side, the officers noted the Decedent no longer appeared to be breathing.

43. Thereafter, the officers removed the WRAP device and handcuffs, two doses of Narcan were administered and cardiopulmonary resuscitation ("CPR") was started. Ambulance and Fire Department personnel continued CPR, attempted to open an airway and administered a third dose of Narcan. Approximately fifteen-minutes later responders were able to obtain a pulse and the Decedent was transported to the St. Cloud Hospital.

44. Having sustained an anoxic brain injury caused by the lack of oxygen to the brain, the Decedent never regained consciousness. On September 9, 2018, the Decedent's life support was removed and he died.

## COUNT ONE

## CIVIL RIGHTS VIOLATIONS BY THE CITY

45. Plaintiff restates and realleges the allegations contained in paragraphs 1-44 herein against the City as though fully set forth herein.

46. Prior to August 26, 2018, the City and the SCPD had final policymaking authority with regard to establishing written policies and training programs governing the conduct of SCPD officers performing policing functions on behalf of the City including, without limitation, those policies and training programs applicable to the use of Tasers and/or prone restraint.

47. Prior to August 26, 2018, the City and SCPD established and/or approved of the SCPD's written policies and training programs governing the conduct of SCPD officers performing policing functions including, without limitation, those policies and training programs applicable to the use of Tasers and/or prone restraint.

48. The written policies and training programs established and/or approved by the City and the SCPD constitute the official policy of the City and the SCPD and those policies and training programs applicable to the use of Tasers and/or prone restraint were the primary cause of the Decedent's death.

49. Prior to August 26, 2018, the City had knowledge of the SCPD's unconstitutional patterns and practices involving the use of Tasers and/or prone restraint, and knowledge that the same gave rise to both actual and potential violations of its citizens' civil rights.

50. Prior to August 26, 2018, with knowledge of the foregoing patterns and practices involving the use of Tasers and and/or prone restraint and in deliberate disregard thereof, the City tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of its citizens including the Decedent.

51. The City's foregoing unconstitutional patterns, practices, and customs incident to the use of Tasers and/or prone restraint were the primary cause of the Decedent's death.

52. As a direct and proximate result of the foregoing unconstitutional violations causing the Decedent's death, Plaintiff has been damaged in an amount exceeding seventy-five thousand ($75,000.00) dollars.

## COUNT TWO

## CIVIL RIGHTS VIOLATIONS BY DEFENDANT POLICE OFFICERS

## IN BOTH THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

53. Plaintiff restates and realleges the allegations contained in paragraphs 1-52 herein against Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn as though fully set forth herein.

54. By their actions described above, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn while acting in both their respective official and individual capacities, violated and deprived the Decedent of his civil rights to be free from the use of excessive and unreasonable force involving the use of Tasers and/or prone restraint.

55. Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn, while acting in both their respective official and individual capacities, subjected the Decedent to these deprivations of his civil rights by acting with a reckless disregard as to whether the Decedent's civil rights would be violated by such actions.

56. As a direct and proximate result of the acts and/or omissions of Officer Riekena, Officer Wilson, Officer Merkling and/or Sergeant Rathburn, Plaintiff has been damaged in an amount exceeding seventy-five thousand ($75,000.00) dollars.

**COUNT THREE**

**NEGLIGENCE**

57. Plaintiff restates and realleges the allegations contained in paragraphs 1-56 herein against the City, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn as though fully set forth herein.

58. On August 26, 2018, the City employed Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn.

59. In its employment of Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn, the City through its SCPD had a duty to exercise reasonable care in the hiring, training, retention and supervision of such officers relative to their employment as police officers. Said duty extended to all persons, including the Decedent.

60. In their official capacities of employment as police officers, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn had a duty to exercise reasonable care in the course of their providing law enforcement services on behalf of the City. Said duty extended to all persons, including the Decedent.

61. In their individual capacities of employment as police officers, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn had a duty to exercise reasonable care in the course of their providing law enforcement services on behalf of the City. Said duty extended to all persons, including the Decedent.

62. As alleged above, the City through its SCPD, by allowing Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn to Tase and/or utilize prone restraint against the Decedent under then existing circumstances, did carelessly and negligently breach its duty of exercising reasonable care toward the Decedent.

63. As alleged above, in their official capacities of employment as police officers, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn, by their Tasing and/or utilizing prone restraint against the Decedent under then existing circumstances, did carelessly and negligently breach their duties of exercising reasonable care toward the Decedent.

64. As alleged above, in their individual capacities of employment as police officers, Officer Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn, by their Tasing and/or utilizing prone restraint against the Decedent under then existing circumstances, did carelessly and negligently breach their duties of exercising reasonable care toward the Decedent.

65. As a direct and proximate cause of the City, Officer Riekena, Officer Wilson, Officer Merkling and/or Sergeant Rathburn's collective and/or individual careless and negligent conduct, Plaintiff has sustained damages in an amount exceeding seventy-five thousand ($75,000.00) dollars.

## JURY DEMAND

Plaintiff respectfully demands trial by jury of all claims and issues as allowed pursuant to applicable law.

WHEREFORE, plaintiff Tamatha M. Bechtold, prays for judgment against

defendants as follows:

1.  As to Count One, a money judgment against defendant City of St. Cloud for an amount in excess of seventy-five thousand ($75,000.00) dollars;

2.  As to Count Two, a money judgment against defendants Matthew Riekena, Erik Wilson, Brandon Merkling and Jared Rathburn, jointly and severally, for an amount in excess of seventy-five thousand ($75,000.00) dollars;

3.  As to Count Three, a money judgment against defendants City of St. Cloud, Matthew Riekena, Erik Wilson, Brandon Merkling and Jared Rathburn, jointly and severally, for an amount in excess of seventy-five thousand ($75,000.00) dollars;

4.  Plaintiff's costs, disbursements, reasonable attorney fees and prejudgment interest; and

5.  For such other and further relief as this court may deem just and equitable.

ROBERT GARDNER LAW

Dated: August 26, 2020

*/s/ Robert M. Gardner*
Robert M. Gardner, #0234977
3265 19th Street N.W., Suite 625
Rochester, MN 55901
Phone: 651-927-9031
*robert@robertgardnerlaw.net*

Attorney for Tamatha M. Bechtold, as Trustee for the Heirs and Next of Kin of Mitchel Raymond Hiltner, Decedent