**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

_____

| | |
|---|---|
| Tamatha M. Bechtold, as Trustee for the Heirs and Next of Kin of Mitchel Raymond Hiltner, Decedent, | Case No. 20-cv-1855 (WMW/LIB) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S STATEMENT OF THE CASE** |
| City of St. Cloud, Minnesota; Matthew Riekena, individually and in his capacity as a St. Cloud police officer; Erik Wilson, individually and in his capacity as a St. Cloud police officer; Brandon Merkling, individually and in his capacity as a St. Cloud police officer; and Jared Rathburn, individually and in his capacity as a St. Cloud police officer, | |
| Defendants. | |

_____

Pursuant to the Court's Pretrial Scheduling Notice and Order (ECF No. 9), plaintiff Tamatha M. Bechtold ("Plaintiff") submits the following Statement of the Case.

**A. Plaintiff's Version of the Facts of the Case.**

On the evening of August 26, 2018, St. Cloud Fire Department medical personnel and defendant St. Cloud police officer Matthew Riekena ("Officer Riekena") were dispatched to a 911 call-based "medical emergency" involving the Decedent.

Upon his arrival, Officer Riekena observed the Decedent to be non-communicative and exhibiting a "thousand-yard stare." Due to the Decedent's incoherency, Officer Riekena requested back-up to hurry their response to the scene.

1

Upon defendant St. Cloud police officer Erik Wilson ("Officer Wilson") and ambulance personnel arriving at the scene, Officer Wilson observed the incoherent Decedent having difficulty breathing.

Upon defendant St. Cloud police officer Brandon Merkling ("Officer Merkling") arriving at the scene, he, Officer Riekena and Officer Wilson determined they would escort the Decedent out of the residence; however, due to the Decedent's incoherency and observed difficulty breathing, the Decedent lacked the ability to cooperate with the officers including their attempts to handcuff him.

Tasers are medically contraindicated to be deployed to the front of a person's torso due to risking potential interactions with their cardiac electrical activity, potentially causing cardiac arrest.

Notwithstanding their belief that the incoherent Decedent was under the influence of drugs, their observations of the Decedent's difficulty breathing, and otherwise mindful of the potentially lethal effects of using Tasers under such circumstances including cardio-pulmonary arrest; Officer Merkling advised Officer Riekena to Tase the Decedent following which Officer Riekena twice Tased the Decedent twice on the front of his body.

For decades, the United States Department of Justice has warned law enforcement agencies about the dangers associated with "prone restraint." National Law Enforcement Technology Center, Positional Asphyxia—Sudden Death (June 1995). Prone-restraint is a potentially lethal form of restraint that, by compression of a person in a prone position with weight on their back and/or abdomen can restrict their ability to breathe and can result in death by asphyxiation. Due to the well-known risks associated with prone restraint, once a

subject is controlled, it is imperative that they be moved from the prone position, and that their breathing be carefully monitored.

The St. Cloud Police Department ("SCPD") is aware of the dangers associated with prone restraint, has incorporated such knowledge in the training of its officers, the ongoing review of its training programs and the updating thereof.

On August 26, 2018, through their training, Officers Riekena, Officer Wilson, Officer Merkling and defendant Sergeant Jared Rathburn ("Sergeant Rathburn") were all aware of the dangers of prone restraint.

Following the incoherent Decedent's being observed having difficulty breathing, his being twice Tased and otherwise mindful of the potentially lethal dangers of prone restraint, the officers placed the Decedent on the floor in a prone restraint (face-down) and handcuffed him behind his back. The officers then requested a WRAP (restraint) device be brought to the scene in order to secure the Decedent's legs for transport to the ambulance.

While awaiting the WRAP device, Officer Riekena knelt across the now prone/handcuffed Decedent's legs while Officer Merkling knelt across the Decedent's upper-back torso area.

Thereafter, defendant Sergeant Jared Rathburn ("Sergeant Rathburn") arrived at the scene with the WRAP device and, due to possessing the superior rank of Sergeant, assumed supervisory authority over the actions of Officers Riekena, Wilson and Merkling.

As Sergeant Rathburn was applying the WRAP device to the Decedent's legs, he asked about the Decedent's status with Officer Merkling responding that he believed the Decedent was breathing because he could hear grunting and observe his chest moving.

Thereafter, as the officers were securing the WRAP device, Sergeant Rathburn again asked about the Decedent's breathing and, as the Decedent was rolled onto his side, the officers noted the Decedent was no longer breathing.

Thereafter, the officers removed the WRAP device and handcuffs, two doses of Narcan were administered and cardiopulmonary resuscitation ("CPR") was started. Ambulance and Fire Department personnel continued CPR, attempted to open an airway and administered a third dose of Narcan. Thereafter, the Decedent was transported to the St. Cloud Hospital.

Having sustained an anoxic brain injury caused by the lack of oxygen to the brain, the Decedent never regained consciousness. On September 9, 2018, the Decedent's life support was removed and he died.

**B. Particularized Facts Supporting Defendants' Liability.**

The August 26, 2018, incident was a 911 call-based "medical emergency."

Officer Riekena observed Decedent's incoherency, inability to respond to his commands and difficulty breathing.

Officer Wilson observed the Decedent's incoherency and difficulty breathing.

Officer Merkling observed the Decedent's incoherency and difficulty breathing.

Tasers are medically contraindicated to be deployed to the front of a person's torso due to risking potentially lethal interactions with their cardiac electrical activity, potentially causing cardiac arrest.

Officer Merkling advised Officer Riekena to Tase the Decedent and, in turn, Officer Riekena twice Tased the Decedent on the front of his body.

The United States Department of Justice has warned law enforcement agencies about the dangers associated with prone restraint. National Law Enforcement Technology Center, Positional Asphyxia—Sudden Death (June 1995).

4

The SCPD is (was) aware of the dangers associated with prone restraint and positional asphyxia, has incorporated such knowledge in the training of its officers, the ongoing review of its training programs and the updating thereof.

On August 26, 2018, through their training, Officers Riekena, Officer Wilson, Officer Merkling and Sergeant Rathburn were all aware of the dangers of prone restraint.

Sergeant Rathburn observed Officer Riekena kneeling across the now prone/handcuffed Decedent's legs and observed Officer Merkling kneeling across the Decedent's upper-back torso area.

As Sergeant Rathburn was applying the WRAP device to the Decedent's legs, he asked about the Decedent's status with Officer Merkling responding that he believed the Decedent was breathing because he could hear grunting and observe his chest moving.

As the officers were securing the WRAP device, Sergeant Rathburn again asked about the Decedent's breathing and, as the Decedent was rolled onto his side, the officers noted the Decedent was no longer breathing.

The Decedent sustained an anoxic brain injury caused by the lack of oxygen to the brain, the Decedent never regained consciousness.

On September 9, 2018, the Decedent's life support was removed and he died.

**C. Itemization and Explanation of Plaintiff's Damages.**

The Decedent was born in 1993, was twenty-five years-old at the time of the August 26, 2018 incident, and at the time of his September 9, 2018 death possessed a remaining life expectancy of approximately fifty-years.

As a result of the Decedent's untimely death, Plaintiff has incurred pecuniary damages in an amount in excess of $75,000.00, excluding interest, costs and attorney fees.

|  |  |
|---|---|
|  | **ROBERT GARDNER LAW** |
| Dated: December 8, 2020 | <u>*/s/ Robert M. Gardner*</u><br>Robert M. Gardner, #0234977<br>3265 19th Street, N.W., Suite 625<br>Rochester, MN 55901<br>Tel:  651-927-9031<br>*robert@robertgardnerlaw.net*<br><br>Attorneys for Plaintiff<br>Tamatha M. Bechtold, as Trustee<br>for the Heirs and Next of Kin of<br>Mitchel Raymond Hiltner, Decedent |